IN THE UNITED STATUS DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GUIMERFE, INC.<br><br>Plaintiff<br><br>V.<br><br>ROSA PEREZ PERDOMO IN HER OFFICIAL CAPACITY SECRETARY OF THE PUERTO RICO HEALTH DEPARTMENT; RYDER MEMORIAL HOSPITAL AND HOSPICIO SAN LUCAS.<br><br>Defendants | CIVIL NO.<br><br><br><br>RE: Unconstitutionality of the CNC Regulatory Act and Regulation 112 |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, Plaintiff, Guimerfe, Inc. through its undersigning attorney and respectfully state, allege and pray:

### Introduction

1. Plaintiff, Guimerfe Inc., brings this action to challenge the regulatory scheme by which the Commonwealth of Puerto Rico controls the establishment and relocation of home care facilities. Since 1979 Puerto Rico has required the issuance of a Certificate of Necessity and Convenience ("CNC") by the Puerto Rico Health Department before anyone can establish a new home care facility or move and existing home care facility to provide service in a different area of the Commonwealth. 24 LPRA § 334 et. seq. (from now on the CNC Act).

2. The need for pediatric home care in Puerto Rico is enormous, Plaintiff's expansion into this area of the health market would provide necessary health care services for children and the home care comfort they and their parents need.

3. On March 2004 Plaintiff, applied for a CNC to establish a pediatric home care facility to serve the eastern region of Puerto Rico.  Many of Plaintiff's business is through referral and in order to refer more patients their providers are requesting a CNC certificate.  Plaintiff has contract offers pending that in order to be fulfilled require a CNC certificate.

4. During the application process Plaintiff complied with all the requirements and standards established by the CNC law, Regulation 56 and Regulation 112.  Plaintiff submitted the extensive supporting documentation required by law and regulation including but not limited to the expensive market study prepared by an economist, the evidence of viability and customer surveys.

5. Defendants, Ryder Memorial Hospital and Hospicio San Lucas, opposed Plaintiff's CNC application for a pediatric home care facility.  Said opposition delayed the CNC process and caused an undue burden and expense on Plaintiff.

6. After waiting three (3) years, on July 2007, the final decision was taken on the CNC application, Plaintiff, was denied the CNC and impeded to enter the home care market.  Even thought they complied with all the requirements established in the law and regulations and affirmatively

established the need and convenience of their service in the Commonwealth of Puerto Rico they were still unlawfully and arbitrarily denied the CNC.

7. Plaintiff's, unsuccessful attempt to establish a home care facility illustrates the government's discrimination in the application of the CNC process. The delay in the process caused Plaintiff to lose thousands of dollars in revenue, and contracts with providers; the consumers lost the benefits of increase competition in the home care services market.

8. The harm that the decision of the Secretary of the Health Department caused to Plaintiff was economic, but to the children of the area was a an emotional harm, since they have been long awaiting and expecting pediatric home care services.

9. This is also a civil antitrust suit seeking actual and treble damages and other relief arising out of the Defendants Ryder Memorial Hospital and Hospicio San Lucas unlawful efforts to exclude Plaintiff from entering the homecare market.

10. Defendants Ryder Memorial Hospital and Hospicio San Lucas, by information or believe, have consciously committed to a common collusive scheme of opposing every CNC application for the establishment of homecare facilities in order to exclude competition and perpetuate a market monopoly.

## Jurisdiction and Venue

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1343 (3) and 42 U.S.C. §1983. Venue is proper since parties are domiciled in Puerto Rico. 28 U.S.C. § 1391(a)(1).

## Parties

12.     Plaintiff, Guimerfe, Inc., is a corporation duly incorporated under the laws of the Commonwealth of Puerto Rico with its principal place of business at Calle C J-3 Urb. Jardines de Caguas Caguas, Puerto Rico 00727.

13.     Defendant Rosa Perez Perdomo is the Secretary of the Puerto Rico Health Department and is the executive and administrative officer exercising full statutory authority over the Health Department's operations. Pursuant to 20 LPRA § 383, the Secretary's duty include the enforcement of all laws which relate to the establishment and supervision of home care facilities in Puerto Rico, including the Certificates of Necessity and Convenience Act.

14.     Defendant Ryder Memorial Hospital is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with its principal place of business at Font Martelo Street 255, Humacao, Puerto Rico 00791.

15.     Defendant Hospicio San Lucas AKA Programa de Salud en el Hogar San Lucas is a corporation organized and existing under the laws of the

Commonwealth of Puerto Rico with its principal place of business at Santa Maria Shopping Center, Ponce, Puerto Rico 00733.

## Causes of Action

### I. Application of CNC Act to Home Care Facilities in Puerto Rico violates the Supremacy Clause, in that Congress has preempted the field, clearly intending to nationally regulate the establishment of Health Care Facilities.

16.    In 1974 Congress passed the National Health Planning and Resources Development Act (NHPRD Act) intended mainly to diminish the rising costs of the health care industry. Through this Act, States were authorized to enact Certificate of Need programs to review upcoming projects for the establishment of health care facilities, thus giving States the power to regulate, allow, or dismiss these projects on a need basis.

17.    In 1986 Congress repealed the Act, above all, for reason of not fulfilling the initial and legitimate purpose of reducing Health Care costs in the Nation, and allowing for many more unaccounted inconveniences. Many States followed suit and repealed their individual CNC legislations. Those few who have not yet done so, have either not included Home Care Facilities on their list of those requiring a Certificate of Need to operate, or established a separate more flexible licensing procedure for the establishment of those facilities.

18.     It is clear that in creating the 1974 Act, Congress intended to nationally regulate the field of Health Care, specifically the establishment of Health Care Facilities in the Nation, by authorizing Certificate of Need programs to be instituted in the States. This was an express authorization for State regulation of Interstate Commerce, after which States followed suit to comply with the Federal Legislation.

19.     It is therefore reasonable to presume that the repeal of such Act maintains the same purpose of national regulation; this time, with an action of Congress that implicitly denotes an intention of no longer authorizing such practice from the States.

20.     The Federal Statute, along with its subsequent annulment, have preempted the field for States, such as Puerto Rico, to implement Certificate of Need Programs regulating the institution of Health Care Facilities. That which was expressly authorized in 1974 with the NHPRD Act has been expressly revoked, and therefore implicitly prohibited. The continuing practice and application of the CNC program in Puerto Rico to Home Care Facilities is a violation of the Supremacy Clause.

## II. Application of the CNC Act to Homecare facilities in Puerto Rico Violate the Dormant Commerce Clause

21.     The Plaintiff realleges each and every preceding allegation as if fully set herein.

6

22.     The CNC Act and its implementing regulation interfere with the flow of the nation's commerce; it provides no benefit to Puerto Rico and serves no rational, nondiscriminatory purpose, they only serve to impose burden on interstate commerce.

23.     The CNC Act and its implementing regulation has no valid factor unrelated to economic protection of existing facilities.   The burden imposed on commerce, even though incidental is excessive compare to the local benefits it serves.  The Secretary of the Health Department can prevent or block a new comer home care facility from providing services in its desired area simply because of the adverse competitive effect it might have on already existing and established home care facilities.

24.     The local benefits the law offers can be served through other non-discriminatory means.  The economic protection of local existing facilities against competition and free market is unjustifiable compared to the burdens imposed on commerce.  The law offers economic protection to already established entities at the expense of market new comers.

25.     The United States constitution allows states to regulate on local health and safety matters.  State restraints of the national market, even under the guise of local health and safety pursuits, are also untenable if a less burdensome, nondiscriminatory alternative is available.

26.     Plaintiff's home care services are an article of interstate commerce. Plaintiff provides and/or will provide home care services for children that have relocated from the United States and other countries to the eastern

region of Puerto Rico. For example minor GV and his family relocated to Puerto Rico from Florida in 2005 and are in need of homecare services for a condition of autism the child has. Plaintiff has provided services of speech therapy to said child and continues to provide services to him.

27.     Plaintiff also stimulates and is involved in the stream of interstate commerce since it purchases most of its equipment and materials from out of Puerto Rico vendors and suppliers. The CNC Act violates the dormant aspect of the commerce clause since it curtails the movement of articles of commerce into Puerto Rico by impeding the establishment of new home care facilities in the island.

28.     Plaintiff home care services are also instrumentalities of commerce since some nurses and staff that advice and provide services were educated in the United States and attend continual medical education courses in the United States. For example one nurse, was educated in New York and has a specialty degree on pediatric intensive care. She relocated from Florida to Puerto Rico on 2004 to work with Plaintiff when the CNC application was filed. She provides or will provide pediatric home care services for Plaintiff.

29.     The CNC Act and its implementing Regulation are applied by Defendant, Health Department, to discriminate both facially and in practical effect against applicants of new home care CNCs and in favor of and protecting already existing home care from competition.

30.     In practice the CNC Act permits an already established home care facility to object a new CNC application simply because it fears additional competition. This practice is not only within the letter of the act, but it is within its spirit as well.

31.     The CNC Act and its implementing Regulation apply obstacles to the entry into the market of homecare services, it makes it more difficult, lengthy and expensive for new comers to enter the homecare service area. The effect of said law and regulation is the same, protectionism.

32.     The CNC Act and its implementing Regulation create undue load on commerce since it creates enormous expense and inordinate delay on companies seeking to establish home care facilities or relocating home care facilities in Puerto Rico and thus burden interstate commerce.

33.     The fact that the CNC Act denies the public of the benefits of competition is also perceived as a burden on interstate commerce.

34.     The practical effect of applying the CNC act to homecare facilities indisputably is to make it more difficult and expensive for new comers to enter the local healthcare market in Puerto Rico; it is discriminatory in purpose and effect. Restricting market entry limits the available service and does nothing to insure that services are provided at reasonable prices.

35.     The CNC Act has extraterritorial effects that invalidate the law under the third category of dormant commerce clause analysis (incidental effects on interstate commerce).

36.     Section 343(e) of the CNC Act states that the Secretary may not issue a CNC unless the applicant's competition will not duly affect existing homecare facilities. This section expressly applies the statute in a protectionist fashion. Local established facilities are protected from competition. This section sets an obstacle to new facilities entry into the home care service areas.

37.     The application of the CNC Act to homecare services deprives the public of the benefits that come from free competition in the homecare market. It deprives consumers of their right to choose the service provider that better serves his/her needs, expectations, availability, etc.; the burden of depriving the public from the benefits of competition weighs heavily in Commerce Clause Balancing.

**III. Application of the CNC Act to Homecare facilities in Puerto Rico Violate the Substantive Due Process Clause**

38.     The Plaintiff realleges each and every preceding allegation as if fully set herein.

39.     The Fourteenth Amendment of the United States Constitution guarantees freedom against arbitrary actions of government.

40.     The purpose of the CNC Act is three fold: (1) satisfy the health needs of the population, (2) reduce medical and hospital cost; and (3) assure the availability of health services in unattended regions at the

time of the enactment of the statute. The CNC Act as applied to home care providers, in fact undermine those goals.

41. Although these may very well be compelling and legitimate purposes, the means employed to achieve those ends must be reasonably related to such ends. The CNC Act has not abided by these set purposes, and has most definitely achieved none.

42. The licensing processing instituted by the CNC Act as applied in Puerto Rico to Home Care Facilities is an excessively onerous one, consisting of unreasonable costs and delays concluding mostly in denial of a CNC, if there is opposition from a sector of the Health Care population. It has failed to reduce rising health care costs, and underserved areas continue to be unaided. The strenuous procedure of obtaining CNCs in Puerto Rico bears no rational relation to the end sought.

43. The records of the Puerto Rico Health Department show that the Secretary of the Health Department conducts a thorough investigation and jump starts the arduous procedure to award a CNC to new Home Care Facilities mostly when opposed by already existing facilities, most of which have dedicated a portion of their revenues to simply oppose all competition trying to enter the Health Care industry.

44. This form of economic protectionism of discrete interest groups from market competition has been found by lower Federal Courts to be of no legitimate purpose. It only serves to deny consumers the benefit of

competition, their right to choose a health care service provider, and the liberty of contracting those services.

45.     The fundamental right to liberty, protected by the Due Process Clause in the Federal constitution, has been recognized by the Supreme Court to include right to contract.

46.     *The* CNC legislation as applied to Home Care Facilities in Puerto Rico is not able to withstand a Reasonable Basis Test, due to the fact that the means of obtaining such CNCs do not bear a rational relation to the legitimate purpose pursued. Nor would it withstand a test of Strict Scrutiny, if necessary, seeing as how the *right to liberty to contract* has been established to be fundamental in nature, and the Secretary of Health's actions of depriving the general public of such right, is neither necessary, nor the only course of action available.

47.     Licensing laws such as the CNC in Puerto Rico, that restrict competition in local markets, provide no apparent benefits , and deprive the general public of fundamental rights such as liberty and right to contract, lack a rational basis for any legitimate purpose, and are therefore a violation of Substantive Due Process.

## IV. Agreement in Restraint of Trade and Conspiracy to Monopolize in Violation of the Sherman and Clayton Acts

48.     The Plaintiff realleges each and every preceding allegation as if fully set herein.

12

49.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas, are the two dominant companies that currently provide homecare service for adults in Puerto Rico.

50.     When a petition for a CNC to establish a homecare facility or move an existing one is filed with the Department of Health, Defendants Ryder Memorial Hospital and Hospicio San Lucas immediately file an opposition with the Department of Health.  They oppose every time and even have a portion of their revenue set out for law firms and economists that largely dedicate themselves to file oppositions to CNC applications in the Department of Health.  The business of CNC opposition has created a lucrative industry not only for existing home care providers, but for economist and attorneys, as well

51.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas, by information or belief, have entered into a common collusive agreement to utilize the CNC certification system to prevent newcomers from entry into the homecare market in Puerto Rico and perpetuate a market monopoly.

52.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas, collusive scheme is so extensive that their representatives attend the Department of Health, in a monthly basis, for hearings of CNCs they are opposing to protect their market monopoly.

53.     Even though the CNC Law and Regulations permits for opposition, Defendants Ryder Memorial Hospital and Hospicio San Lucas are using the process in an unrestrained and uncontrollable fashion, abusing of

the process, thereby discouraging competition and preserving their dominance in the market.

54.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas oppositions, have the effect of delaying the process of CNC for years, making the process for new comers cost thousands of dollars and many times discouraging them from continuing pursuing the CNC. Defendants, Ryder Memorial Hospital and Hospicio San Lucas, even file motions for reconsideration or judicial review, which effectively postpones the commencement of competition for at least a year if not several.

55.     Upon information or belief, Defendants, Ryder Memorial Hospital and Hospicio San Lucas, conspiracy consisted of concerted actions and undertakings among themselves with the purpose and effect of eliminating competition from new comer homecare facilities to create and perpetuate a noncompetitive structure for homecare services in the island.

56.     As a result of Defendants, Ryder Memorial Hospital and Hospicio San Lucas, collusive conduct and exclusionary practice, Plaintiff was unlawfully excluded from entering the pediatric homecare service market.  The purpose and effect of this course of conduct was to eliminate competition and prevent the entry of Plaintiff as competitors of Defendants, Ryder Memorial Hospital and Hospicio San Lucas, and to perpetuate a noncompetitive structure in the homecare service business.

14

57.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas, unlawfully conspire to monopolize the market for homecare services in violation of the Sherman Act, 15 U.S.C. § 1 et. seq. and the Clayton Act codified at 15 U.S.C. § 12 to 27.

58.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas, have achieved their unlawful objective of obtaining through anticompetitive or exclusionary means, monopoly power in the homecare service market.

59.     Defendants, Ryder Memorial Hospital and Hospicio San Lucas, conspiracy to restraint trade and commerce affect interstate commerce.

60.     Plaintiff has been injured in business or property within the meaning of section 4 of the Clayton Act, 15 U.S.C § 14, by Defendants, Ryder Memorial Hospital and Hospicio San Lucas, conduct in that they were impeded to enter the homecare service industry in Puerto Rico.

**WHEREFORE**, Plaintiff, Guimerfe, Inc. request this Honorable Court enters judgment in their favor and against Defendants and prays for the following relief:

a) Declaratory Judgment finding that the CNC Act and its implementing Regulation 112 are unconstitutional on its face and as applied, violate the rights, privileges and immunities secured to Guimerfe, Inc. under the Commerce Clause and Due Process Clause since it deprives Plaintiffs of their constitutional rights to engage in interstate trade free from restrictive state regulation; find that the law goes against the the

Supermacy Clause; grant injunctive relief against Defendant Rosa Perez Perdomo in her official capacity as Secretary of the Puerto Rico Health Department, enjoining all further enforcement of Regulation 112;

b) That the monopolization, and the predatory, anti-competitive and exclusionary acts committed in furtherance thereof by Defendants Ryder Memorial Hospital and Hospicio San Lucas, be adjudged a violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

c) That Plaintiff be awarded damages for their lost profits from the prevention and exclusion of their entry into the homecare service market, including compensatory damages in excess of $750,000.00, or such other compensatory damages which shall be proven at trial;

d) That Plaintiff be awarded treble damages determined to have been sustained by Plaintiff due to the monopolistic conduct of the Defendants Ryder Memorial Hospital and Hospicio San Lucas, and that judgment be entered against Defendant joint and severally;

e) That Defendants Ryder Memorial Hospital and Hospicio San Lucas be enjoined from any further predatory, anti-competitive and exclusionary conduct by which their unlawful monopoly on the homecare service market has been maintained;

f) That Plaintiff recover from Defendant the costs of this suit and reasonable attorneys' fees in accordance with Section 4 of the Clayton Act (15 U.S.C. § 15) and the Federal Rules of Civil Procedure;

g) Punitive damages against Defendants Ryder Memorial Hospital and Hospicio San Lucas in excess of $500,000.00;

h) And any other relief deemed fit by this Honorable Court.

i) Trial by Jury is requested.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 25th day of February 2008.

/s/ Miguel Oppenheimer
USDC No. 220012
Oppenheimer Rios & Associates, P.S.C.
P.O. Box 79831
Carolina PR, 00984-9831
Tel. 787-765-9911/787-375-6033
Fax. 787-765-9911
Email: miguelo@oppenheimerlaw.com

## VERIFICATION

I, Mercedes Garcia Reyes, President of Guimerfe, Inc. hereby certify that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

In San Juan, Puerto Rico, this 25th day of February 2008.

Mercedes Garcia Reyes

AFFIDAVIT NO. 97

Sworn and subscribed before me by Mercedes Garcia Reyes, President of Guimerfe, Inc., of legal age, single, and resident of Caguas, Puerto Rico, whom I give faith of knowing personally.

In San Juan, Puerto Rico, this 25th day of February 2008.



NOTARY PUBLIC

17