IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GUIMERFE, INC.

Plaintiff

vs                                                        CIVIL 08-1243CCC

ROSA PEREZ-PERDOMO in her official
capacity as Secretary of the Puerto Rico
Health Department,
RYDER MEMORIAL HOSPITAL and
HOSPICIO SAN LUCAS

Defendants

## OPINION AND ORDER

Now before the Court is a challenge to the constitutionality of Puerto Rico's regulatory scheme regarding the establishment and relocation of home health care facilities, created pursuant to 24 L.P.R.A. §334, et. seq., which requires the issuance of Certificates of Necessity and Convenience[1] (CNC) by the Puerto Rico Department of Health.

According to the allegations of the complaint, in March, 2004, plaintiff Guimerfe, Inc. (Guimerfe) applied for a CNC to establish a pediatric home care facility to serve the eastern region of Puerto Rico (¶3).  The application for the certificate, the issuance of which was opposed by defendants Ryder Memorial Hospital (Ryder) and Hospicio San Lucas (San Lucas), was denied in July, 2007.

Guimerfe in this suit alleges that the application of the CNC requirement to home care facilities in Puerto Rico violates the Supremacy Clause, the dormant Commerce Clause and its substantive due process.  Plaintiff further alleges that Ryder and San Lucas "have entered into a common collusive agreement to utilize the CNC certification system to prevent newcomers from entry into the home care market in Puerto Rico and perpetuate a market monopoly," (¶51) in violation of the Sherman Act, 15 U.S.C. §1, et seq., and the Clayton Act, 15 U.S.C. §§12-27.

---

[1] Title 24 L.P.R.A. §334(e) defines a Certificate of Necessity and Convenience as:

> A document issued by the Secretary of Health authorizing a person to carry out any of the activities covered by §§334-334j of this title, certifying that the same is necessary for the population it is to serve and that it will not unduly affect the existing services, thus contributing to the orderly and adequate development of health services in Puerto Rico.

CIVIL 08-1243CCC                    2

The action is now before us on Ryder and San Lucas' Motion to Dismiss and/or for Abstention filed May 1, 2008 **(docket entry 19)**[2], which plaintiff opposed (docket entries 23 and 24), and to which movants replied (docket entry 27).  Defendant Secretary of Health Rosa Pérez-Perdomo (Pérez-Perdomo) joined the motion (**docket entry 28**).[3] Defendants seek dismissal or abstention on the basis of a myriad of reasons, of which they discuss the following:

(1) This court should abstain from entertaining this case under the Burford Abstention Doctrine or dismiss it in deference to the expertise of the Department of Health;

(2) There is no dormant Commerce Clause claim because all parties are local entities and it is not a protectionist measure; and

(3) There is no Sherman Act claim because movants are protected by the Noerr-Pennington Immunity Doctrine for actions taken to further their business interests.

**The Burford Abstention**

Movants provide a considerable discourse on the factual and procedural administrative agency proceedings leading up to this suit.  Flowing from that history, they request that we dismiss the action pursuant to the abstention doctrine developed in Burford v. Sun Oil Co., 319 U.S. 315, 333-34 (1943), and its progeny, by which the United States Supreme Court set forth the policy that a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies when:  1) there are difficult policy problems of substantial public import whose importance transcends the result in the case at bar; or 2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect

---

[2] The memorandum of law was filed separately (docket entry 21).  In support of its motion, defendants have also included as exhibits the Department of Health's Notice of Resolution, Resolution, and the Report from Hearing Examiner (docket entry 20).  (See, also, English translation (docket entry 26)).  Inasmuch as the motion is one for dismissal and not summary judgment, only their existence, and not the specific content, has been considered.

[3] The Motion Joining and Supplementing Request for Dismissal (**docket entry 28**) is NOTED.

CIVIL 08-1243CCC                                3

to a matter of substantial state concern.  Defendants state that the Burford abstention seeks to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed, in the first instance, to expert administrative solution.  (Memorandum of law, docket entry 21, page 8).  That is, federal courts should not intervene with cases when a party has a judicial review remedy available in order to seek revision of a determination by a state administrative agency.

A review of Guimerfe's complaint, however, demonstrates that it is not challenging in this Court  the specifics of the denial of its application for a CNC or asking that we intervene in the proceedings.  Rather, it is challenging the constitutionality of the entire regulatory scheme of the CNC Act and its regulations for implementation, on its face and as it is applied to home healthcare facilities.  It claims that the requirement violates the Supremacy Clause, Sec I, p. 5; the dormant Commerce Clause, Sec. II, p.6; and Substantive Due Process, Sec. III, p.10.

Therefore, a Burford abstention is inappropriate in this case.


**The Dormant Commerce Clause**

Many of the same issues were raised in a similar challenge to the CNC Act and were was addressed by the Court of Appeals for the First Circuit in Walgreen Co. v. Rullan, 405 F.3d. 50, (1st Cir. 2005).  That case focused on the law's application to pharmacies.  Plaintiff Walgreen Co., an out of state retail pharmacy chain, asserted that the statute impermissibly discriminates against or excessively burdens interstate commerce and violates due process.

In its opinion in Walgreen, the Court stated:

> Under the dormant Commerce Clause, if a state law has either the purpose or effect of significantly favoring in-state commercial interests over out-of-state commercial interests, the law will "routinely" be invalidated "unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." If the state law regulates in state and out-of-state interests evenhandedly, the statute will be upheld "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."

Id., p.55 (citations omitted).

CIVIL 08-1243CCC                                4

        The dormant Commerce Clause prohibits protectionist state regulation designed to
benefit in-state interests by burdening out-of-state competitors.  Grant's Dairy–Maine, LLC
v. Commissioner of Maine Dept. of Agriculture, 232 F.3d. 8, 18-19 (1st Cir. 2000).

        While the possibility for a dormant Commerce Clause conflict such as the one present
in Walgreen exists, the controversy is not now before us.  As stated in the complaint at ¶12:
"Plaintiff, Guimerfe, Inc., is a corporation duly incorporated under the laws of the
Commonwealth of Puerto Rico with its principal place of business at . . . Caguas, Puerto
Rico...."  Plaintiff is not an out-of-state competitor.  Inasmuch as the Constitution confines
the jurisdiction of the federal courts to actual cases and controversies, U.S. Const. Art. III,
§2, cl.1. Connectu LLC v. Zuckerberg, 522 F.3d. 82, 88 (1st Cir. 2008), the unconstitutionality
of the CNC Act, in its application to home healthcare facilities, as violating the dormant
Commerce Clause would have to be raised by an out-of-state entity.[4]


**The Antitrust Claims**

        Plaintiff seeks actual and treble damages as well as other relief from Ryder and San
Lucas for their allegedly unlawful efforts to exclude Guimerfe from entering the home care
market (¶9).  It alleges that these defendant have consciously committed to a common and
collusive scheme of opposing every CNC application for the establishment of home care
facilities in order to exclude competition and perpetuate its market monopoly (¶12), in
violation of the Sherman and Clayton Acts, 15 U.S.C. §§1-27.

        In their motion to dismiss, defendants contend that there is no Sherman Act claim
because their actions are "protected by the Noerr-Pennington Immunity Doctrine and/or are
not an attempt to monopolize since they were sought in order to further their business

_____

        [4] Guimerfe, in its memorandum in opposition, refers to the spirit of Clarke v. Securities Industry
Ass'n, 479 U.S. 388 (1987) to convince us that intrastate players are reliable plaintiff that may raise
dormant Commerce Clause challenges where there the discriminatory ordinance harms both intrastate
and interstate commerce. This argument, however, still fails to overcome the absence of a case or
controversy that is ripe for adjudication.

CIVIL 08-1243CCC                              5

interests."  Defendants' Memorandum of Law, Docket entry 21-2, page 24.  Movants cite

Great Escape, Inc. v. Union City Body Co., 791 F.2d 532, 541(7th Cir. 1986), for their

argument that the mere intention to exclude competition and to expand one's business are

not sufficient to show specific intent to monopolize, an essential element in private, antitrust

litigation.  That is, to present a prima facie case of attempt tp monopolize, plaintiff must show

evidence of a specific intent to monopolize any part of commerce, plus anticompetitive

conduct directed to the accomplishment of that unlawful purpose.  Grayhound Computer

Corp. v. International Business Machines Corp., 559 F.2d 488, 504 (9th Cir. 1977).

Movants further rely on the Noerr Pennington antitrust immunity doctrine, which

evolved from two Supreme Court cases, United Mine Workers v. Pennington, 381 U.S. 657,

670 (1965), and Eastern R.R. Conference v. Noerr Motor Freight, 365 U.S. 127, 135-38

(1961).

> That doctrine, which derives from the First Amendment's
> guarantee of "the right . . . to petition the government for redress
> of grievances," U.S.Const. Amend. I, shields from antitrust
> liability entities who join together to influence government action
> –even if they seek to restrain competition or to damage
> competitors.  The doctrine applies to "petitions" before
> legislatures, administrative agencies and courts.  Even false
> statements presented to support such statements are protected.

Davric Maine Corporation v. Rancourt, 216 F.3d 143, 147 (1st Cir. 2000)(citations omitted).

> The federal antitrust laws [ ] do not regulate the conduct of
> private individuals in seeking anticompetitive action from the
> government.   This doctrine . . . rests ultimately upon a
> recognition that the antitrust law, "tailored as they are for the
> business world, are not at all appropriate for application in the
> political  arena."   That a private party's political motives are
> selfish is irrelevant:"Noerr shields from the Sherman Act a
> concerted effort to influence public officials regardless of intent
> or purpose."

City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S.365, 379-80(1991).  (Citations

omitted.)

The Noerr-Pennington immunity doctrine, however, does have a "sham" exception,

which withholds immunity when a party's resort to governmental process from antitrust

CIVIL 08-1243CCC                                   6

immunity when such resort is objectively baseless and intended only to burden a rival with

the governmental-decision making process itself.  Davric Maine Corporation, 216 F.3d. at

147.

> The "sham" except encompasses situation in which persons use
> the governmental process–as opposed to the outcome of that
> process–as an anticompetitive weapon. A classic example is the
> filing of frivolous objections to the license application of a
> competitor, with no expectation of achieving denial of the license
> but simply in order to impose expense and delay. A "sham"
> situation involves a defendant whose activities are not genuinely
> aimed at procuring favorable government action at all, not one
> genuinely seeks to achieve his governmental result, but does so
> through improper means.

City of Columbia, 499 U.S. at 380 (citations omitted).

It is exactly the type of conduct in the above-cited example–preventing a competitor

from entering the market by barricading the way with an expensive, time-consuming web of

unwarranted, governmental processing–which Guimerfe avers.  Whether this is, in fact, the

case, and whether or not defendant fall within the immunity provided by the Noerr-

Pennington doctrine, are highly factual determinations inappropriate for a dismissal motion.

For the above-stated reasons, defendants' Motion to Dismiss and/or for Abstention

**(docket entry 19)** is GRANTED in part and DENIED in part.  The motion to dismiss is

GRANTED as to the claim under the dormant Commerce Clause, which is DISMISSED.  The

remainder of the motion to dismiss or abstain, is DENIED in all respects.

SO ORDERED.

At San Juan, Puerto Rico, on March 31, 2009.


                                              S/CARMEN CONSUELO CEREZO
                                              United States District Judge